Gary E. BLIZZARD, Plaintiff,

v.

Sam HASTINGS, Defendant.

Gary E. BLIZZARD, Plaintiff,

v.

George TRUITT and Earl
Messick, Defendants.

Civ. A. Nos. 94–212–RRM, 92–475–RRM.

United States District Court,
D. Delaware.

March 31, 1995.

Gary E. Blizzard, pro se plaintiff.

James F. Kelleher, and Peter O. Jamison, III, Delaware Dept. of Justice, Wilmington, DE, for defendants.

## OPINION

McKELVIE, District Judge.

These are two civil rights cases. The plaintiff, Gary E. Blizzard, is a state prisoner incarcerated at the Sussex Correctional Institution. The defendants in Civil Action No. 92–475, George Truitt and Earl Messick, and the defendant in Civil Action No. 94–212, Sam Hastings, are employees of the Department of Corrections of the State of Delaware.

In his amended complaints Blizzard alleges the defendants have wrongfully retaliated against him for exercising his first amendment rights, wrongfully denied him due process during disciplinary proceedings, and conspired to place him at an unreasonable risk of harm by telling other inmates he is a snitch.

The court had referred Civil Action No. 92–475 to the Magistrate Judge. The defendants in that case have moved for a summary judgment, and the Magistrate has issued a Report and Recommendation that the court grant that motion. Blizzard has filed exceptions to that Report.

The defendant in Civil Action No. 94–212 has filed a motion to dismiss the complaint. As the court finds the claims in Civil Action No. 92–475 and 94–212 sufficiently related, the court has consolidated these two cases and will rule on the defendants' motions in these cases in this Opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.** *April, 1992: Blizzard's Charge of Misconduct by Officer Ennis*

In both of his amended complaints, Blizzard alleges that in April of 1992, he filed a complaint under the Department's inmate grievance procedure alleging that Correctional Officer Ennis was selling to inmates the opportunity to place telephone calls. Blizzard alleges that the correctional officer assigned to hear the grievance, Lieutenant George Truitt, referred the matter to Officer Ennis' supervisor, Lieutenant Earl Messick. Blizzard further alleges that Messick investigated the allegation of misconduct, found it was baseless, and charged Blizzard with filing a false report and with lying. *See* Blizzard's amended complaint in C.A. No. 92–475, Docket Item ("D.I.") 23 at 1 and his affidavit attached to that amended complaint at Exhibit ("Ex.") D. Copies of the Disciplinary Report and Order to Execute Sanctions are at D.I. 23 at Ex. B and C.

**B.** *June, 1992: Blizzard Charged with Lying*

Lieutenant Truitt investigated Messick's charge that Blizzard had lied when he charged Officer Ennis with misconduct. Lieutenant Truitt provided Blizzard with notice of Messick's charge against him, gave him an opportunity to speak to the issues, and then found Blizzard had lied and ordered him disciplined with 2 days in isolation. D.I. 23 at Ex. D–2.

Blizzard alleges Lieutenants Truitt and Messick wrongfully refused to allow him to call witnesses in support of his claim against Officer Ennis. Blizzard alleges Messick has wrongfully retaliated against him for filing the charge against Ennis by reporting various disciplinary charges against him. D.I. 23 at 1.

### C. January and February, 1993: Blizzard Is Searched and Found with Contraband

Blizzard alleges Lieutenant Messick has told others about "getting" Blizzard for filing these charges against Officer Ennis. D.I. 23 at 2. As evidence of retaliation, Blizzard alleges he has been harassed by being searched in January and February of 1993. He alleges that when he was searched in February of 1993, and found to be hiding contraband in the sleeve of a jacket the State had provided to him, he was wrongfully disciplined for possession of contraband and destruction of property. D.I. 23 at 3. A copy of the Disciplinary Report is at D.I. 23 at Ex. I. See also D.I. 23 at Ex. K.

In addition, Blizzard alleges Lieutenant Messick wrongfully fabricated evidence, including evidence that Blizzard offered to drop this case in exchange for Messick dropping certain disciplinary charges. A copy of the Disciplinary Report is at D.I. 23 at Ex. J and a copy of the Order to execute Sanctions is at Ex. L. Blizzard also alleges Lieutenant Messick lied and wrongfully charged Blizzard with threatening him by reporting that Blizzard threatened to tell the warden that Messick "was bringing in cigarettes for cash money" after he had declined Blizzard's offer to drop this lawsuit. D.I. 23 at Ex. J.

### D. May and June 1993: Blizzard Is Charged with Assault and Bribery

Blizzard alleges that in May of 1993 he was charged with assault on another inmate and placed in special custody. D.I. 23 at 5. He alleges he was wrongfully put in isolation before written statements were obtained from the victim or witnesses. A copy of the Notice of Administrative Transfer is at D.I. 3 at Ex. N. The Report is at D.I. 23 at Ex. P, and the Notice of Hearing is at D.I. 23 at Ex.

T. See also D.I. 23 at Ex. Q, R, S, and U–3, 4 and 5. He alleges Lieutenant Truitt also wrongfully acted as the investigating officer and that he wrongfully and falsely charged Blizzard with bribery when Blizzard allegedly offered an agreement to drop charges and then threatened Truitt with false charges. D.I. 23 at 6, 9. Blizzard alleges he was held in isolation for 21 days pending the investigation on the assault charges, was found guilty and then sentenced to only 14 days. Thus, he claims his due process rights were violated by defendants' failure to credit him with the first 21 days he spent in isolation. D.I. 23 at 12.

### E. April, 1994: Blizzard Claims Officer Hastings Told Inmates He Is a Snitch

Blizzard filed Civil Action No. 94–212 in April of 1994. In the complaint he repeats an allegation from his amended complaint in Civil Action No. 92–475 that Officer Hastings wrongfully retaliated against him for filing the April, 1992 charge of misconduct by telling guards and inmates Blizzard is a "snitch." See C.A. No. 92–475 D.I. 23 at 2, affidavits of Gary Blizzard and Nelson Hoover, C.A. No. 94–212 D.I. 9 at Ex. B and J; see also Blizzard's affidavit at D.I. 23 at Ex. D–4, affidavit of James Cecil at D.I. 23 at Ex. E. Blizzard alleges that acting on Officer Hastings' behalf, Lieutenant Messick made intimidating statements to inmates to cause them to be afraid to make out affidavits supporting Blizzard in this case. D.I. 23 at 4. In addition, Blizzard alleges that after property was stolen from his cell, Officer Hastings wrongfully delayed the search for the property for two hours and then wrongfully conducted an inadequate search. See Blizzard's affidavit at C.A. No. 94–212 D.I. 9 at Ex. K–4.

In 1981, Blizzard filed an action in this court against the Warden of the Sussex Correctional Institution and a correctional officer. In that case, Blizzard reported he had cooperated in the Governor's Task Force investigating corruption and other problems in the Delaware Department of Corrections, and that despite the defendants' knowledge of his reputation as a snitch or squealer and

their knowledge of threats against his life in retaliation for his association with that investigation, defendants recklessly transferred him to a tier in Sussex Correctional Institution where he was assaulted and injured by other prisoners. Blizzard obtained a judgment against the correctional officer for failure to take reasonable care to protect him from an unreasonable risk of harm. *See Blizzard v. Quillen,* 579 F.Supp. 1446 (D.Del. 1984). Blizzard has filed a number of civil rights lawsuits in this court since recovering the judgment in that case.

The defendants have denied liability, have moved for summary judgments in their favor and have filed affidavits denying the factual basis for a number of the plaintiff's allegations. For example, Officer Hastings has filed an affidavit where he denies telling inmates Blizzard is a snitch, denies acting to retaliate against Blizzard, and denies Lieutenant Messick ordered or suggested he retaliate. Officer Hastings also reports he did participate with others in a search of Blizzard and did find cigarettes hidden in his jacket. *See* Civil Action No. 94–212 D.I. 8.

In response to these motions, Blizzard has filed several affidavits from various different inmates, including affidavits by inmates reporting that Officer Hastings has referred to Blizzard as a snitch. *See, e.g.,* affidavits of Nelson Hoover and James Cecil at Civil Action No. 94–212 D.I. 8 at Ex. B and E; *see also* Civil Action No. 92–475 D.I. 23.

*DISCUSSION*

Blizzard has identified three types of claims for relief: 1) a claim based on an alleged denial of procedural due process in the disciplinary proceedings against him, 2) a claim for alleged wrongful retaliation, and 3) a claim for placing him at an unreasonable risk of harm by telling inmates he is a snitch. For the following reasons, the court will grant a summary judgment in favor of the defendants as to all of plaintiff's claims.

■ Federal Rule of Civil Procedure 56(c) authorizes a court to grant a summary judgment if it finds "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." A genuine issue of material fact arises

only if a reasonable jury could find for the nonmoving party on that fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

I. *Blizzard's Allegations as to a Denial of Procedural Due Process*

■ Blizzard contends his due process rights were violated when he was denied the right to call witnesses and offer evidence on his behalf during the disciplinary proceedings cited in his complaint. In order for a prisoner to make out a claim under the Due Process Clause, he must first demonstrate that a protected liberty or property interest was infringed by defendant's action. *See Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). These protected interests may be found either in the Constitution or in the state statutes and regulations governing the prison system. *See Hewitt v. Helms,* 459 U.S. 460, 470–72, 103 S.Ct. 864, 870–72, 74 L.Ed.2d 675 (1983) (finding that "unmistakably mandatory" language in state laws may create a protected liberty interest).

■ In this case, defendants moved Blizzard to administrative segregation pending an investigation of misconduct, investigated the charges of misconduct, found he had committed the misconduct charged, and imposed segregation as punishment. The Supreme Court has held that the reclassification or transfer of an inmate to a more restrictive environment does not implicate a liberty interest protected by the Fourteenth Amendment. *Id.* at 468–69, 103 S.Ct. at 869–70. Furthermore, this court has grave doubts that a liberty interest can be found in Delaware's statutes and regulations governing classification within the prison system, for administrative or punitive purposes. *See Saunders v. Watson,* 1990 U.S.Dist. LEXIS, No. 88–519 (D.Del. Jan. 25, 1990) (Report and Recommendation) *adopted,* 1990 U.S.Dist. LEXIS 20248 (D.Del. June 6, 1990) (finding the state of Delaware has created no liberty interest in a prisoner's classification in its statutes or regulations which govern classification determinations); *Brown v. Cunningham,* 730 F.Supp. 612, 614–15 (D.Del.1990) (holding that an inmate has no

liberty interest in being free from administrative segregation under Delaware law or administrative regulations).

■■■ To the extent that Delaware's regulations governing classification for punitive purposes could possibly be construed to create a limited liberty interest, clearly the process due to a prisoner amounts to no more than notice of the charges against him and an opportunity to present his views to the prison officials. *See Fridge v. Dixon,* Civil Action No. 83–193–LON (D.Del. Jan. 30, 1985) at 11. Assuming for the purposes of this decision that Blizzard had a liberty interest under the State's Code of Penal Discipline to certain minimal due process, there is no genuine issue of material fact as to whether the State provided Blizzard with that minimal due process in each of the disciplinary proceedings he identifies. In each instance, defendants gave Blizzard notice of the alleged misconduct and an opportunity to make whatever statement he wished in his behalf. The court will, therefore, grant defendants' motions on plaintiff's claims that his rights to procedural due process were violated.

## II. *Blizzard's Allegations as to Wrongful Retaliation*

Blizzard contends defendants have wrongfully retaliated against him for exercising his first amendment rights in charging Officer Ennis with misconduct. That retaliation allegedly includes wrongfully charging Blizzard with violations of disciplinary rules, wrongfully intimidating witnesses who would otherwise offer affidavits in his behalf, telling other inmates he is a snitch, and failing to properly investigate the claims his property had been stolen.

This court is greatly concerned by the vast number of frivolous civil rights actions filed by prisoners pursuant to 42 U.S.C. § 1983. The usual costs of proceeding in federal court are not borne by a pro se prisoner granted *in forma pauperis* status. Moreover, many of the traditional sanctions available to the court which are effective in addressing the problem of frivolous lawsuits when imposed on private litigants provide little deterrence to the indigent, pro se prisoner plaintiff.

Claims of unconstitutional retaliation are particularly troublesome because they are fraught with the potential for abuse. Virtually every prisoner can assert a claim for retaliation as a result of a decision that is unfavorable to him. Here, it is clear that at the core of Blizzard's wrongful retaliation claims is his disagreement with the State's decision on how to operate its prisons. He is unhappy with defendants' investigation of his allegations of misconduct by Officer Ennis. Blizzard contends it constitutes misconduct for the correctional officers to search him, and it is retaliation when they find he has hidden contraband on his clothes.

■■■ This court adopts the position that, in order to prevail on a claim of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals such as preserving institutional order and discipline. *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir.1994) (per curiam); *accord Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985); *Jones v. Harrison,* 864 F.Supp. 166, 168 (D.Kan.1994).

■■■ The facts as identified by both plaintiff and defendants as to the incidents in question establish a sufficient basis to find that the alleged retaliatory acts advanced legitimate goals of the correctional institution. Further, the undisputed facts support the defendants' decisions to enforce the Department's rules and procedures as they did. See *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985). The court will therefore grant the defendants' motions for a summary judgment on these claims.

■■■ Blizzard has also raised a generalized allegation of retaliation that the defendants have intimidated prisoners to prevent them from filing affidavits in his various lawsuits. Such a claim, if proven, may well provide a basis for relief. However, Blizzard has failed to allege any facts which would support this claim. For example, he has failed to identify who has been intimidated and to what relevant evidence that person would testify.

Furthermore, the court finds Blizzard's allegation a bit curious. As noted above, in this action Blizzard has offered a number of affidavits from prisoners in support of his claims, including affidavits that support his contention that Officer Hastings has told inmates he is a snitch. The existence of these affidavits seems to contradict Blizzard's claim that defendants have wrongfully intimidated witnesses who would offer testimony in support of his claims.

### III. Blizzard's Allegations as to Unreasonable Risk of Harm

Blizzard's claim that defendants have sought to retaliate against him by spreading the word he is a snitch is also troubling. As we know from his prior litigation, this information can put a prisoner at risk of being injured. Further, as noted above, while Officer Hastings has denied he has called Blizzard a snitch, Blizzard has offered affidavits from others to support his claims. Consequently, for the purposes of this motion, the court must accept Blizzard's claim as true.

The court recognizes that a plaintiff may prove a claim for a violation of his eighth amendment right not to be subjected to cruel and unusual punishment where he can show prison officials have, "with deliberate indifference," exposed him to an unreasonable risk of serious harm. *Helling v. McKinney,* —— U.S. ——, ——, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22, 33 (1993); *see Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

Blizzard argues in his response to defendant's motion that his health, safety, and life have been placed in danger, apparently because of Officer Hastings' conduct. However, in the ten sworn affidavits attached to Blizzard's brief in response to defendants' motion, the only facts the court can find to support this assertion is the following: "as a result of Hastings' statements, plaintiff had numerous repeated confrontations and altercations with inmates." The court finds Blizzard has failed to allege facts sufficient to allow a reasonable jury to conclude that Officer Hastings, with deliberate indifference, exposed him to an unreasonable risk of serious harm. Consequently, the court will grant a summary judgment in favor of defendants and against the plaintiff on this claim in plaintiff's complaint.

### CONCLUSION

For these reasons, the court will grant defendants' motions for a summary judgment on all of the claims in both of plaintiff's complaints. An appropriate Order will be entered in accordance with this Opinion.